# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TIMOTHY HEADRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | Case No. 4:18-CV-1669 SEP |
| ) | |
| KINGSLEY WAATE, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by Defendants Kingsley Waate ("Waate"), Paul Hopgood ("Hopgood"), and Javan Fowlkes ("Fowlkes"), (collectively, "Defendants"). Doc. [39]. Pro se Plaintiff Timothy Headrick ("Plaintiff") brings this action under 42 U.S.C. § 1983, asserting a claim of deliberate indifference to his safety and security in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiff also brings a retaliation claim against Defendants, alleging that they mistreated him in retaliation for his use of the inmate grievance process. Both claims arise out of events that occurred on May 11, 2018, when Plaintiff was left handcuffed in his cell for several hours. For the following reasons, the Court will grant Defendants' motion for summary judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In setting forth the facts relevant to this motion, the Court notes that Plaintiff has not complied with Federal Rule of Civil Procedure 56(c)(1) or Local Rule 4.01(E) governing summary judgment motions. Specifically, although Defendants, in support of their motion for summary judgment, properly submitted a Statement of Uncontroverted Material Facts ("SUMF"), Doc. [41], Plaintiff failed to respond to or controvert anything in Defendants' SUMF. Federal Rule of Civil Procedure 56(c)(1) provides in pertinent part that "[a] party asserting that a

1

fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation (including those made for purposes of the motion only), admission, interrogatory answers or other materials." Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion." Fed. R. Civ. P. 56(c)(1). Likewise, under the Local Rules of the United States District Court for the Eastern District of Missouri, all matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party. *See* E.D. Mo. L.R. 4.01(E).

The Court is mindful that Plaintiff does not have an attorney. Notwithstanding his pro se status, however, Plaintiff must still follow the Federal Rules of Civil Procedure and of this Court. *See Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("All civil litigants are required to follow applicable procedural rules."); *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000) (per curiam) ("A pro se litigant is bound by the litigation rules as is a lawyer . . . ."); *Silberstein v. Internal Revenue Serv.*, 16 F.3d 585, 860 (8th Cir. 1994) ("local rules . . . are binding on the parties."). Plaintiff's response to Defendants' SUMF does not satisfy Fed. R. Civ. P. 56(c)(1) or Local Rule 4.01, as Plaintiff does not attempt to controvert any of Defendants' facts with appropriate material from the record. Because Plaintiff has not controverted the facts set forth in Defendant's SUMF, the Court finds that Defendants' SUMF is deemed admitted in its entirety by Plaintiff. *See Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 991 (8th Cir. 2006) (district court properly deemed facts admitted that were not properly controverted; Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion.'). Bearing Plaintiff's admissions and the summary judgment standard in mind, the Court has reviewed the record and accepts the following facts as true.

At the time of the events giving rise to his complaint, Plaintiff was a pretrial detainee at the St. Louis City Justice Center ("Justice Center"), where he was housed in "Five Bravo," a disciplinary and segregation unit. Doc. [41] ¶¶ 1-2. Defendants were employed at the Justice Center as correctional officers. Doc. [41] ¶ 4. Inmates housed in Five Bravo receive one hour of recreation time per day, Monday through Friday. Doc. [41] ¶ 3. On May 11, 2018, Defendants

Waate and Hopgood arrived at Plaintiff's cell at approximately 5:00 p.m. to escort Plaintiff and his cellmate, D'Marco Reynolds ("Reynolds") to the day room of Five Bravo for their recreation time. Doc. [41] ¶ 4. Plaintiff, due to an incident unrelated to the claims at issue here, had a cast on his right leg and was using crutches. Doc. [41] ¶ 5. Pursuant to a Justice Center policy requiring inmates to remain in handcuffs during their recreation hour, Defendant Hopgood placed handcuffs on Plaintiff when he arrived at the day room. Doc. [41] ¶ 7; Doc. [39-3] at 1. At his deposition, Plaintiff alleged that he believed Defendant Fowlkes had instructed Defendant Hopgood to handcuff him, but he later testified that he had no knowledge of any such order, and was merely assuming such to be true. Doc. [39-1] at 47.

Defendants Hopgood and Waate supervised Plaintiff's recreation time, and when the hour was over, they escorted Plaintiff and Reynolds back to their cell. Doc. [39-3] at 1-2. Once Plaintiff and Reynolds were in their cell with the door secured, Defendant Waate removed the handcuffs from Reynolds through the chuckhole door. Doc. [39-1] at 22. However, Plaintiff's handcuffs were not removed at that time. Doc. [41] ¶ 13. Because Defendant Waate was not the officer who initially placed the handcuffs on Plaintiff, and the handcuffs on Plaintiff did not belong to him, Defendant Waate believed another officer would remove Plaintiff's handcuffs. Doc. [41] ¶ 14. Meanwhile, Defendant Hopgood, distracted by his duties preparing other inmates for their recreation time, and believing that Plaintiff's handcuffs would be removed by another officer, left Plaintiff's cell to continue facilitating inmate recreation time. Doc. [41] ¶ 15; Doc. [39-3] ¶¶ 13-14. When Defendants' shift ended at 11:00 p.m. on May 11, 2018, none of the Defendants was aware that Plaintiff remained handcuffed in his cell. Doc. [41] ¶¶ 29-30.

As Defendants Waate and Hopgood left his cell, Plaintiff heard one of them say that he would "be back," and Plaintiff sat on his bunk waiting for someone to return and remove his cuffs. Doc. [39-1] at 25. Plaintiff did not alert Defendants to the fact that his handcuffs had been left on, either by verbally informing them, or by pressing the panic call button located in his cell. Doc. [41] ¶¶ 16, 21. Eventually, Plaintiff lay down on his bunk and fell asleep while still cuffed. Doc. [41] ¶ 18. After sleeping for approximately seven and a half hours, Plaintiff awoke and went to use the bathroom, at which point he fell. Doc. [41] ¶¶ 19, 27. His cellmate, Reynolds, pressed their cell's panic call button to summon help. Doc. [41] ¶ 20. Justice Center medical personnel responded to Plaintiff's cell in response to the panic call alert, at which time Plaintiff was placed in a wheelchair and his handcuffs removed. Doc. [41] ¶¶ 24-25. Defendants were

3

not among the personnel who responded to Plaintiff's cell, as their shifts had ended and they had gone home.  Doc. [41] ¶ 29.

A nurse examined Plaintiff and found that his wrists were slightly discolored and cool to the touch.  Doc. [41] ¶ 31.  Plaintiff required no treatment for injury to his wrists from the handcuffs, or for any injury resulting from the fall.  Doc. [39-1] at 41.  After being examined in the Justice Center medical unit, Plaintiff was returned to his cell with Reynolds.  Doc. [41] ¶ 33.

During the time that Plaintiff was cuffed in their shared cell, Reynolds did not harm, attempt to harm, or threaten to harm Plaintiff.  Doc. [41] ¶¶ 34-36.  Plaintiff testified that he first met Reynolds on May 4, 2018, only a few days before the incident that is the subject of this lawsuit, and he further testified that they had never had a disagreement or been involved in an altercation.  Doc. [39-1] at 29-30.  Plaintiff also testified that he never felt he was in danger of being harmed by anyone, including Reynolds, while he was handcuffed in their shared cell.  *Id*.

As of May 11, 2018, Plaintiff had filed only three inmate grievances at the Justice Center.  Doc. [41] ¶ 39.  None of the Defendants were the subject of any of those grievances, and the grievances were not filed with Defendants, but rather through the Justice Center's Constituency Services Unit.  Doc. [41] ¶ 40.  Defendants had no knowledge of the grievances filed by Plaintiff prior to May 11, 2018.  Doc. [39-2] ¶ 17; Doc. [39-3] ¶ 21; Doc. [39-4] ¶ 20.  Nonetheless, Plaintiff contends that he was left handcuffed in his cell on the night in question as retaliation for filing those three grievances.  *See* Doc. [1] at 3; Doc. [39-1] at 77; Doc. [41] ¶ 37.  Plaintiff further asserts that his cellmate, Reynolds, informed him that an "Officer Tillery"[1] had concocted a scheme with Reynolds, whereby he would leave Plaintiff handcuffed so that Reynolds could attack Plaintiff—again, all in retaliation for filing grievances.  *Id*. at 2.  Plaintiff filed an affidavit by Reynolds in which he largely repeats these same claims.  Doc. [42] at 10-11.  Reynolds attests that he did not agree to participate in the scheme.  *Id*.  Notably, Reynolds does not mention any of the Defendants in his affidavit but focuses solely on Officer Tillery's alleged statement that Plaintiff's use of the grievance process had made him a target of "the Administration."  *Id*. at 10.  Additionally, Plaintiff testified that he had no direct knowledge of any plan to retaliate against

---

[1] It is not clear from the record whether there is an Officer Tillery at the Justice Center.  Officer Tillery was not named as a defendant in this action, nor in any of the other actions filed by Plaintiff in the Eastern District of Missouri around the same time as the instant action.  *See Headrick v. Glass*, Case No. 18-cv-1696-NCC; *Headrick v. Nurse Steph*, Case No. 4:19-cv-920-AGF; and *Headrick v. Glass*, Case No. 18-cv-1683-CDP.

4

him, and he merely assumed that officers were not happy when grievances were filed and would tend to retaliate against inmates who utilized the grievance process.  Doc. [39-1] at 84.

Defendants had no knowledge of any comments made by an Officer Tillery, or any other Justice Center employee concerning a plan to retaliate against Plaintiff.  Doc. [41] ¶ 42. Additionally, none of the Defendants was aware of any plan on the part of any Justice Center employee to purposely leave Plaintiff handcuffed in his cell so that his cellmate could assault him.  Doc. [41] ¶¶ 43-44.

Plaintiff subsequently filed the instant action, in which he alleges two claims under 42 U.S.C. § 1983:  (1) a failure-to-protect claim, in which he asserts that Defendants were deliberately indifferent to his safety and security when they left him handcuffed in his cell, thus leaving him vulnerable to attack by his cellmate; and (2) a retaliation claim, alleging that Defendants left him handcuffed in retaliation for his use of the inmate grievance process. Defendants argue that they are entitled to summary judgment based on qualified immunity, because Plaintiff has not established that they violated his federal constitutional or statutory rights.

## II.    LEGAL STANDARD

### A.  Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013).  The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial.  *Id.* at 324.

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment.  *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1191 (8th Cir. 1995).

5

In determining if a genuine issue of material fact is present, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Further, a court must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

### B. Qualified Immunity

Qualified immunity shields government officials from civil liability in a § 1983 action unless the official's conduct violates a "clearly established constitutional or statutory right of which a reasonable person would have known." *DeBoise v. Taser Int'l, Inc.*, 760 F.3d 892, 896 (8th Cir. 2014) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)). This immunity permits "officers to make reasonable errors," and provides "ample room for mistaken judgments." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011) (internal quotation marks omitted). The defense "protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

The Court uses a two-pronged test to resolve qualified immunity issues. First, "the court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Second, "the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (quotation marks and citations omitted). If either prong is not satisfied, qualified immunity applies. *Id.* The Court is free to address the two prongs in either order. *Id.* at 236. "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001) (citation omitted). If no constitutional violation occurred, the Court's analysis is done. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case.").

Additionally, "[a]lthough qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, and, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008); *see also Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) ("To defeat qualified immunity, a plaintiff has the burden to prove: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.").

### III. DISCUSSION

#### A. Failure-to-Protect Claim

As a pretrial detainee, Plaintiff's claims arise under the Fourteenth Amendment, but the elements of his claim and standards applied are similar to those of an Eighth Amendment claim asserting cruel and unusual punishment due to a prison official's failure to protect an inmate from harm. *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014). To prove that prison officials violated his Fourteenth Amendment rights by failing to protect him, Plaintiff must satisfy a two-prong test. First, Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This prong is viewed objectively. *Id*. Second, Plaintiff must prove that the defendant prison official acted with deliberate indifference to the substantial risk of serious harm. *Id*. This "second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (internal quotation marks omitted). *See also Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016) ("A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk.").

To be found deliberately indifferent, then, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference "requires proof of a reckless disregard of the known risk." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal quotation marks omitted). "Deliberate indifference is 'akin to criminal recklessness,' something more than mere

7

negligence; a plaintiff must show that a prison official 'actually knew that the inmate faced a substantial risk of serious harm' and did not respond reasonably to that risk." *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 726 (8th Cir. 2018) (quoting *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006); *see also Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) ("Deliberate indifference is an extremely high standard that requires a mental state "akin to criminal recklessness."). To prevail on his claim, then, Plaintiff must show "'more than negligence, more even than gross negligence.'" *Fourte v. Faulkner Cnty.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

Whether a risk was known to a defendant must be considered from that defendant's perspective at the time in question, "not with hindsight's perfect vision." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (citing *Williams v. Nebraska State Penitentiary*, 57 F.3d 667, 669 (8th Cir. 1995)). Some of the factors relevant to assessing a defendant's subjective awareness of a substantial risk of serious harm include whether the defendant knew about threats against the plaintiff, whether the plaintiff reported to the defendants that he felt in danger or wanted protection, whether the plaintiff's assailant (or, as here, potential assailant) had a known propensity for violent behavior, and whether the defendants were aware of a history of adverse interactions between the plaintiff and his assailant. *See generally Pagels v. Morrison*, 335 F.3d 736, 740-41 (8th Cir. 2003); *Schoelch v. Mitchell*, 625 F.3d 1041, 1047-48 (8th Cir. 2010). *See also Vandevender*, 970 F.3d at 976 (noting that failure-to-protect cases often involve an attacker who was known to be violent, or who had previously threatened or fought with the victim, and liability turns on whether the official was aware of the known threat) (collecting cases)).

The Court need not address the first objective prong of the failure-to-protect inquiry (incarceration under conditions posing a substantial risk of serious harm), because, as further discussed below, it is clear that Defendants are entitled to summary judgment based on the second subjective prong (deliberate indifference). The Court finds no basis in the record on which a reasonable jury could find that Defendants were subjectively aware of a substantial risk to Plaintiff and were deliberately indifferent to such risk, as it is undisputed that Defendants did not know that Plaintiff remained handcuffed in his cell. *See Jones*, 641 Fed. App'x. at 666 (To be liable under the second subjective component of a failure-to-protect claim, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

8

As to Defendant Fowlkes, there is nothing on the record to indicate that he was deliberately indifferent to Plaintiff's health and safety. Quite the contrary. The record establishes that Defendant Fowlkes did not handcuff Plaintiff on the day of the incident and did not accompany him back to his cell after recreation time. SUMF ¶¶ 8, 11. Nor is there any evidence that Fowlkes was at any time aware that Plaintiff had been left handcuffed in his cell on May 11, 2018. Indeed, there is no evidence of record that Fowlkes was personally involved in any way with the incident on May 11, 2018. To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009); *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006). Plaintiff has not shown any personal involvement by Defendant Fowlkes in the events that gave rise to this lawsuit, and concomitantly, has also failed to demonstrate Fowlkes's subjective awareness of any substantial risk to Plaintiff. A defendant cannot be deliberately indifferent to an entirely unknown risk; consequently, Plaintiff has failed to show that Fowlkes was deliberately indifferent to Plaintiff's safety and well-being. Because Plaintiff has failed to prove a violation of his Fourteenth Amendment rights, Fowlkes is entitled to summary judgment based on qualified immunity on Plaintiff's failure-to-protect claim. *See Capps v. Olson*, 780 F.3d 879, 884 (8th Cir. 2015).

The Court likewise concludes that Defendants Waate and Hopgood lacked the requisite subjective awareness of a substantial risk to Plaintiff. While Plaintiff has established the personal involvement of Defendants Waate and Hopgood in the events that gave rise to Plaintiff's claim—Hopgood placed the handcuffs on Plaintiff, and Waate and Hopgood jointly escorted Plaintiff back to his cell—the evidence of record establishes that neither of them was aware that Plaintiff had been left handcuffed in his cell. As recounted above, Defendant Waate did not handcuff Plaintiff, and believed that the officer who had done so would remove the cuffs. Doc. [41] ¶ 14. Meanwhile, Defendant Hopgood was distracted by his duties preparing other inmates for their recreation time, and he believed that Plaintiff's handcuffs would be removed by another officer. Doc. [41] ¶ 15; Doc. [39-3] ¶¶ 13-14. As noted *supra*, a defendant cannot be deliberately indifferent to a risk of which he was not cognizant.

Additionally, while it may seem negligent to fail to ensure that an inmate's handcuffs were removed, particularly where, as here, the inmate was on crutches, an officer's actions that may "constitute poor judgment, negligence, or possibly even gross negligence" do not suffice to

9

establish deliberate indifference. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 818-819 (8th Cir. 2012); *see also Drake v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006) ("Deliberate indifference is akin to criminal recklessness and requires something more than mere negligent misconduct."); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) ("A showing of deliberate indifference is greater than gross negligence.").

On the facts established in the record here, Plaintiff has not demonstrated the requisite subjective awareness of any substantial risk to Plaintiff, and the Court cannot say that the behavior of Hopgood or Waate rose to the level of deliberate indifference. If no constitutional violation occurred, the Court's analysis is done. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case."). Because Plaintiff has not established that either Hopgood or Waate violated any of his clearly established federal statutory or constitutional rights, they are likewise entitled to summary judgment based on qualified immunity with respect to Plaintiff's failure-to-protect claim. *See Capps*, 780 F.3d at 884.

### B. Retaliation Claim

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, (2019). Additionally, in the Eighth Circuit, it has long been clearly established that a plaintiff has a "right to be free from retaliation for availing one's self of the prison grievance process." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *see also Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity.") (internal quotation marks and citation omitted); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1994).

To establish a First Amendment claim of retaliation under 42 U.S.C. § 1983, a plaintiff must allege that (1) he exercised a constitutionally protected right, (2) a governmental official took adverse action against him, and (3) the adverse action was motivated at least in part by the exercise of the constitutional right. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). To prevail on a retaliation claim, a plaintiff must prove that retaliation was "the actual motivating factor" for the alleged adverse

10

action. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993).  Thus, to survive Defendants' Motion for Summary Judgment, Plaintiff must provide evidence that Defendants acted in retaliation for Plaintiff's exercise of his protected First Amendment rights, i.e, his use of the Justice Center grievance system.

Plaintiff's Complaint alleges that Defendants retaliated against him in violation of the First Amendment for the filing and pursing of three grievances prior to the May 11, 2018, incident.  *See* Doc. [1] at 3; Doc. [39-1] at 77; Doc. [41] ¶ 37.  Not one of Plaintiff's three prior grievances was filed against any of Defendants, and it is undisputed that Defendants had no knowledge of the grievances filed by Plaintiff prior to May 11, 2018.  Doc. [39-2] ¶ 17; Doc. [39-3] ¶ 21; Doc. [39-4] ¶ 20; Doc. [41] ¶40.  In light of this, Plaintiff's claim founders on the third prong of a retaliation claim—that the adverse action be motivated at least in part by the exercise of the constitutional right.  *See Peterson*, 754 F.3d at 602.  The alleged retaliatory action by Defendants could not have been motivated by a protected action by Plaintiff of which Defendants lacked awareness.  It stands to reason that, where an officer is unaware of the protected activity at issue, he cannot retaliate against a plaintiff for participating in such activity.  As there is no evidence on this record to establish a causal connection between Plaintiff's use of the grievance process and the allegedly retaliatory actions taken by Defendants, Defendants are entitled to qualified immunity regarding Plaintiff's retaliation claim.

**IV.   CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. [39]) is **GRANTED**.

An appropriate order of dismiss will accompany this order.

Dated this 30th day of November, 2020.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE